IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL C. WARNKEN and ALL CALIFORNIANS SIMILARLY SITUATED,[1]

Plaintiffs, No. CIV S-08-2891 LKK EFB PS

vs.

ARNOLD SCHWARZENEGGER, Governor of California; DEBRA BOWEN, Secretary of State; JERRY BROWN, Attorney General; THE CALIFORNIA ASSEMBLY, and ONE TO UNKNOWN DOE ASSISTANTS,

Defendants. FINDINGS AND RECOMMENDATIONS
______________________________/

Presently pending are motions to dismiss filed by: (1) the California Assembly, Assembly Members, and Chief Clerk E. Dotson Wilson (the "Assembly defendants"), Dckt. No. 16, and (2) California Attorney General Edmund G. Brown, Jr., Dckt. No. 18. Both motions seek to dismiss plaintiff's action for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to

---

[1] Plaintiff styles his complaint as a class action but has not moved for class certification. In any event, he is appearing pro se, and cannot therefore represent the interests of a class, *see McShane v. United States*, 366 F.2d 286 (9th Cir. 1966), and the court cannot allow a purported class action to proceed without counsel, *Chesney v. Seifert*, 70 F.3d 1277 (9th Cir. 1995). Accordingly, for purposes of these findings, the instant action is treated not as a class action but instead as an action brought by plaintiff individually.

state a claim, Fed. R. Civ. P. 12(b)(6). These matters were heard by the undersigned on January 21, 2009.[2] Plaintiff Michael Warnken appeared and represented himself in pro se; the Attorney General was represented by attorney Jack Woodside; the Assembly defendants were represented by attorney John Kennedy.

For the reasons that follow, plaintiff has failed to satisfy the most fundamental prerequisite to suit – that this court has subject matter jurisdiction to adjudicate the claims he presents. Accordingly, this court recommends that the motions to dismiss be granted and plaintiff's complaint be dismissed without leave to amend.

I. <u>BACKGROUND</u>

Plaintiff, a resident of Santa Barbara, alleges in his complaint and other simultaneously filed documents (totaling more than 1,000 pages) that the currently drawn California Assembly ("Assembly") districts, based on the 2000 National Census, do not adequately represent their constituents. Of particular concern to plaintiff is the growth in population throughout the state, while the number of Assembly seats (80) has remained constant since 1854. Compl. at 10. Thus, a member of the Assembly now represents an average of 424,000 persons, as compared to 2,594 persons in 1854. *Id*. at 10, 16. Plaintiff alleges that this "diluted" representation makes state government inaccessible to, and unrepresentative of, the common citizen. The population size of the districts also makes running for office so expensive that it becomes out of reach for most citizens, an outcome exacerbated by the Assembly drawing its own boundaries for each district and thereby diminishing competition and maintaining incumbency.

Plaintiff claims that these problems violate the U.S. Constitution, Article I, Section 2; the First, Fourth, Fifth, Sixth, Ninth, Tenth, Eleventh, Thirteenth, Fourteenth, Fifteenth, Nineteenth and Twenty-Sixth Amendments to the U.S. Constitution; and pendent state constitutional provisions. His thirteen claims extensively overlap and at times it is difficult to distinguish one

---

[2] This fee-paid case is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1).

from another. Claims one, two, and three describe the allegations and injuries repeated throughout the complaint and reflect a common core of operative facts that are representative of all thirteen claims. These claims contend that the currently drawn assembly district lines are too large and are inappropriately drawn by the assembly members themselves. Compl. at 18-24. As a result, plaintiff alleges, assembly members cannot adequately represent such large numbers of citizens and plaintiff is prevented from accessing his representative. *Id*. These large districts dilute voter power and are drawn in such a manner that benefits incumbents in elections. *Id*.

Claims four to thirteen substantially repeat the allegations of claims one, two, and three or contain similar grievances. Claims four and five assert that the large population in each district prevents each citizen from receiving fair representation, dilutes their votes and allows incumbents to maintain their positions. Compl. at 25, 27. Claims six and nine contend that as a result of the population conditions and district sizes discussed in the complaint, third party political groups have a difficult time in winning Assembly seats as do other Californians who are not wealthy or lawyers. Compl. at 32, 41. Claim seven objects to the notion of "one person, one vote" outlined by the Supreme Court in *Reynolds v. Sims*, 377 U.S. 533 (1964); specifically, plaintiff complains that Santa Barbara County does not have its own representative in the Assembly and must vote with other counties in choosing a representative for their district, and argues that each California county should have its own representative in the Assembly and it is unfair that highly populated areas have more representation than sparsely populated regions. Compl. at 34-35. Claims eight and thirteen contend that such large Assembly districts prevent citizens from individual contact with their representatives and note that plaintiff's many petitions have not been addressed. Compl. at 37, 53. Claim ten alleges that staff for Assembly members have become excessively numerous and possess too much responsibility. Compl. at 43. Finally, claim eleven contends that the state should appoint more judges and claim twelve states that the existing Assembly members are overworked, thus more should be elected. Compl. at 46-47.

////

Plaintiff seeks the following relief (requests for relief are set forth throughout the complaint, but the following generally reflects plaintiff's summary set forth at pages 59-61 of the complaint):

1. Convene a three-judge panel pursuant to 28 U.S.C. § 2284(1).
2. Permanently enjoin the Legislature's practice of drawing its own districts.
3. Permanently enjoin the custom of adding staff members in lieu of more Assembly members.
4. Permanently enjoin Article 4, Section 4a of the California Constitution, which provides that "the Assembly shall consist of 80 members."
5. Declare that a new basis must be established for the formulation of the number of Assembly representatives.
6. Grant declarative judgment authorizing increase in number of Assembly members and districts.
7. Appoint a Special Master(s) to investigate these issues, including the number of Assembly members to fulfill their constitutional duties, the number and purpose of Assembly committees, and the number, purpose and use of staff members.
8. Declare that there are currently too many Assembly staff members and temporarily or permanently enjoin the hiring of new staff until the above investigation has been concluded or an independent determination made by the court.
9. Permanently enjoin use of the Robo-Pen.
10. Order the California Compensation Commission to meet and consider the salaries of the Assembly.
11. Remand this complaint, construed separately against the Assembly Members and the Assembly Staffers, to the Assembly Joint Ethics Committee.
12. Order that plaintiff's petition be entered into the Assembly's Journal and that the Assembly form a Standing Petition Committee.
13. Award plaintiff costs and attorney fees.

In addition to the Assembly defendants and the Attorney General who were served and brought the instant motions to dismiss, plaintiff named as defendants: Governor Schwarzenegger, Secretary of State Debra Bowen, unknown Doe staff and assistants of the Assembly, and the "Robotic Signature Pen," which plaintiff describes as an "evil piece of hardware" "used to sign most, if not all, pieces of paper submitted to the citizens . . . from their representatives." Compl. at 9. However, plaintiff never served these additional defendants. At the court hearing on January 21, 2009, plaintiff indicated that he did not properly serve Governor Schwarzenegger, but he would serve the Governor. Transcript of January 21, 2009, hearing

("Tr.") at 1-2. There is no indication that plaintiff ever served Governor Schwarzenegger or any of the other additional defendants, and plaintiff has not shown good cause for his failure to serve them. Therefore, Defendants Schwarzenegger, Bowen, unknown Doe staff and assistants of the Assembly, and the Robotic Signature Pen are dismissed pursuant to Fed. R. Civ. P. 4(m).

II. DISCUSSION

A. Jurisdiction/Standing

Defendants contend that this case should be dismissed for lack of subject matter jurisdiction as plaintiff does not have standing and there is no justiciable case or controversy.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to seek dismissal of an action where federal subject matter jurisdiction is lacking. "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

A party may seek dismissal for lack of jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). In a factual challenge, the court may consider evidence demonstrating or refuting the existence of jurisdiction. *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008). "In such circumstances, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)).

Standing is an element of subject matter jurisdiction. *Warren*, 328 F.3d at 1140. To establish standing under Article III of the Constitution, a plaintiff must demonstrate: (1) "an

'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized," meaning that the injury must "affect the plaintiff in a personal and individual way," and (b) "'actual or imminent,' not 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court'"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted). Each element of standing is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id*. at 561.

Regardless of the validity or invalidity of his allegations, plaintiff has failed to meet his burden of establishing federal subject matter jurisdiction. As discussed below, he lacks standing because he has failed to assert facts demonstrating an injury in fact and the court cannot redress the injuries plaintiff alleges in his complaint.

1. Injury in Fact

Plaintiff has not alleged a concrete and particularized injury that is unique to him under the first prong of the standing analysis. While plaintiff argues adamantly that he is injured by a dilution in representation and the other problems he describes in his complaint, his injury as he articulates is no different from that of every other California citizen. The very essence of his complaints reduce to a generalized, undifferentiated grievance regarding the large number of people in each Assembly district. It is well established that a plaintiff does not have standing "to challenge laws of general application where their own injury is not distinct from that suffered in general by other taxpayers or citizens." *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598 (2007) (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 613 (1989)). This is because "[t]he judicial power of the United States defined by Art. III is not an unconditioned authority to

determine the constitutionality of legislative or executive acts." *Id*. (citing *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)).

Plaintiff argues that *Baker v. Carr,* 369 U.S. 186 (1962), provides a basis for jurisdiction to entertain his claims. In *Baker*, the Supreme Court found a sufficient injury to confer standing where the number of state representatives from each county was not reflective of the county population based on one person, one vote. *See id.*; *Reynolds v. Sims*, 377 U.S. 533 (1964).[3] However, plaintiffs's reliance on *Baker* is misplaced. The Supreme Court in *Lance v. Coffman*, 549 U.S. 437, 441 (2007), addressed essentially this same argument. The Court found that four Colorado voters did not have standing to bring their claim that a clause of Colorado's Constitution, as interpreted by the Colorado Supreme Court, violated the Elections Clause of the U.S. Constitution. The Supreme Court stated: "The only injury plaintiffs allege is that the law-specifically the Elections Clause-has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past." *Id*. at 442. The Court distinguished the alleged injury from "the sorts of injuries alleged by plaintiffs in voting rights cases where we have found standing." *Id*. (citing *Baker v. Carr,* 369 U.S. at 207-08 (finding voters had standing to challenge state apportionment statute under Equal Protection clause)). The Court concluded that "[b]ecause plaintiffs assert no particularized stake in the litigation, we hold that they lack standing to bring their Elections Clause claim." *Id*. As in *Lance*, the type of injury asserted here is quite different from the voting rights injuries at stake in *Baker*. *Lance*, at 442. Plaintiff does not allege that the different

[3] In claim seven, plaintiff challenges the "one person, one vote" principle from *Reynolds.* He complains that Santa Barbara County does not have its own representative in the Assembly and must vote with other counties in choosing a representative for their district, and argues that each California county should have its own representative in the Assembly and it is unfair that highly populated areas have more representation than sparsely populated regions. Compl. at 35. In *Reynolds*, the Supreme Court described in detail its reasoning in striking down the type of system plaintiff requests. In summary, it would not be equitable for a county with a population in the thousands to have the same representation of a county with a population in the millions. Plaintiff's alleged injury which appears to be lack of equal representation, is no different than that of Californians generally and is not a particularized enough injury to confer standing.

Assembly districts are different sizes. Plaintiff simply argues that each district contains approximately 424,000 people and that all of the districts are therefore too large. Compl. at 16.

The Supreme Court has repeatedly found that a plaintiff will not have standing where the injury is common to other taxpayers and citizens. *Hein*, 551 U.S. at 598. In *Lance*, the Supreme Court stated, "[w]e have consistently held that a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy." *Id*. at 439 (quoting *Lujan*, 504 U.S. at 573-74). Here, plaintiff alleges general grievances similar to those described in *Lance* that will not confer standing.

During oral argument, plaintiff disputed defendants' characterization of his claims as a generalized grievance and argued that the injury he alleges is unique to him.[4] Tr. at 4-5. He argued that if all other citizens were equally restricted from accessing their Assembly members as he is, then state government would not have accomplished anything. *Id*. Yet, plaintiff insists the state has passed many laws and statutes. *Id*. Plaintiff also noted that other California (and non-California) citizens are able to access and communicate with Assembly members, but state government officials refuse to respond to the many petitions and letters he has sent. Compl. at 37-38. Clearly, plaintiff is frustrated with what he sees as a dysfunctional system within which his voice is not being heard by his elected officials. However, plaintiff's alleged injury is not unique and whatever the effect may be from the size of the Assembly districts, it is, indeed, common to other taxpayers and citizens. As such, his complaint is merely a general grievance regarding the size of Assembly districts affecting the public in general. The Supreme Court has made clear in *Hein* and *Lance*, that this sort of alleged injury does not confer standing.

////

---

[4] Plaintiff's argument is contradicted by his other assertions that large districts prevent the majority of citizens from accessing their representatives. Compl. at 3-4.

Plaintiff has not established a sufficient injury in fact under the first standing prong to find Article III jurisdiction. *Lujan*, 504 U.S. at 560. Plaintiff's claims are merely an attempt "to employ a federal court as a forum in which to air his generalized grievances" about the size of assembly districts. *Valley Forge Christian Coll.*, 454 U.S. at 479. Therefore, the court does not have jurisdiction over plaintiff's claims, and those claims should be dismissed.

2. Redressibility/Political Question Doctrine

Defendants further argue that this case should be dismissed as it presents a purely political question that is more appropriately decided by the legislative branch of government. As discussed below, plaintiff's claims present non-justiciable political questions which this court cannot redress.

The third prong of Article III standing requires that the alleged injury be likely to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561. The redressability prong requires the court to "examine whether 'the court has the power to right or to prevent the claimed injury.'" *Railway Labor Executives Ass'n v. Dole*, 760 F.2d 1021, 1023 (9th Cir. 1985) (quoting *Gonzales v. Gorusch*, 688 F.2d 1263, 1267 (9th Cir. 1985)). While standing generally focuses upon the potential plaintiff and his or her relationship to the alleged harm, the redressability prong of standing turns the focus upon the type of redress that the court is able to offer to the plaintiff. Courts will refrain from finding standing in cases where, regardless of a showing of injury-in-fact, the court would be unable to offer redress that would cure plaintiff's harm. *Railway Labor Executives Ass'n*, 760 F.2d at 1023-24 (plaintiffs failed to satisfy redressability prong where court did not have the power to "fashion[ ] an enforcement manual for an executive branch agency that was presumably commissioned by Congress to devise its own enforcement strategy").

The redressability issue is further complicated as it is entwined with a justiciablity question involving the political question doctrine and separation of powers. "The Supreme Court has indicated that disputes involving political questions lie outside of the Article III

jurisdiction of federal courts." *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007); *Summers v. Earth Island Inst.*, __ U.S. __, 129 S.Ct. 1142, 1148 (2009) ("courts have no charter to review and revise legislative and executive action"); *Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004) ("the judicial department has no business entertaining the claim . . . because the question is entrusted to one of the political branches or involves no judicially enforceable rights.").

"The political question doctrine serves to prevent the federal courts from intruding unduly on certain policy choices and value judgments that are constitutionally committed to Congress or the executive branch." *Koohi v. United States*, 976 F.2d 1328, 1331 (9th Cir. 1992). "A nonjusticiable political question exists when, to resolve a dispute, the court must make a policy judgment of a legislative nature, rather than resolving the dispute through legal and factual analysis." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 785 (9th Cir. 2005).

In *Baker v. Carr*, 369 U.S. 186, 210 (1962), the Supreme Court set forth six independent factors, any one of which demonstrates the presence of a non-justiciable political question:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

"'[T]he first three *Baker* factors focus on the constitutional limitations of a court's jurisdiction, while the final three are 'prudential considerations [that] counsel against judicial intervention.' " *Corrie*, 503 F.3d at 981 (quoting *Wang v. Masaitis*, 416 F.3d 992, 996 (9th Cir. 2005)).

Plaintiff's alleged injury is based on his assertion that the size of Assembly districts prevents him and other citizens from accessing their state representatives, dilutes their votes,

////

and maintains incumbents in office.[5]  To redress the alleged injury, plaintiff asks the federal court to insure that lines of California's districts are redrawn to provide many more Assembly representatives.[6]

Plaintiff is essentially asking this court to ignore more than 150 years of California history, disregard millions of California voters, and unilaterally alter the state constitution. Similarly, in *Barnett v. Obama*, __ F.Supp.2d __, 2009 WL 3861788 (C.D. Cal. Oct. 29, 2009), the plaintiff requested that the court declare the current President of the United States illegitimate and unable to meet the constitutional requirements to hold office, despite the fact that the president was elected by over sixty-nine million people and received the required votes from the Electoral College.  *Id*. at 11.  The court declined plaintiff's request, noting the non-justiciablity of the action, as the Constitution grants Congress, not the judiciary, the power to remove a sitting president.  *Id*. at 13.  As in *Barnett*, the instant case involves a strictly political question that must be resolved outside the judicial branch.  The relief that plaintiff seeks lies in the legislative branch of the State of California.

It is well established that states are free to design their own elections laws and procedures and these are political questions beyond the reach of the federal courts.  *Bennett v. Yoshina*, 140 F.3d 1218, 1225 (9th Cir. 1998) (citations omitted).  The federal courts should intercede only when state elections deny equal protection, abridge the freedom of speech, or violate a federal statute.  *Id*.  Plaintiff alleges no facts demonstrating such an actionable claim in the instant case. Federal courts must defer to the states' regulatory interests when these federal rights are not implicated.  *Id*.

---

[5] Plaintiff states that when the California Constitution was passed in 1849 it provided for no fewer than thirty and no more than eighty members in the Assembly.  Compl. at 9.  California currently has 80 Assembly members.

[6] Plaintiff requests that the court remand this action to the California Assembly and in some manner force them to redistrict the state and remove them from office if they do not comply.  Compl. at 58.

Based on the six factors set forth in *Baker*, it is clear that plaintiff's claims demonstrate the presence of a non-justiciable political question. The primary issue concerns the second factor, a lack of judicially discoverable and manageable standards for resolving the redistricting plaintiff requests. In *Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004), the Supreme Court focused on this second factor in finding that a similar Congressional redistricting plan was non-justiciable. In *Vieth*, the Court described the difficult and complicated history of federal courts attempting to manage this type of redistricting litigation utilizing the test set forth in *Davis v. Bandemer*, 478 U.S. 109 (1986).[7] *Id*., at 278-84. Plaintiff asks this court to attempt to provide this same relief, despite the *Vieth* court's description of this history as "one long record of puzzlement and consternation." *Id*. at 282. Despite plaintiff's conclusory arguments that this situation is judicially manageable, *Vieth* is controlling and holds otherwise.

Ultimately, as stated above and emphasized by the Assembly defendants, plaintiff's remedy lies not in court but in utilizing the political process.[8] Plaintiff argues that he has tried and failed to have his voice heard by state government. Yet, it would not be possible for the Assembly to function if the members were required to personally speak with each and every person residing in his or her district, even if the size of each district was just a few thousand as plaintiff requests. While plaintiff is undoubtedly frustrated, use of the courts is not the proper forum to address his frustration. His situation was deftly described by the Supreme Court in *United States v. Richardson*, 418 U.S. 166 (1974):

> It can be argued that if respondent is not permitted to litigate this issue, no one can do so. In a very real sense, the absence of any particular individual or class to

---

[7] The Court in *Davis* stated that a political gerrymandering claim could succeed only where plaintiffs showed "both intentional discrimination against an identifiable political group and an actual discriminatory effect on that group." 478 U.S. at 127.

[8] Indeed, several of plaintiff's claims may be moot as on November 4, 2008, California voters passed Proposition 11. Proposition 11 mandates that districts will be drawn by a 14 member commission consisting of five people from the largest political party, five from the second largest political party and four not registered with either of the largest political parties. California Constitution Article 21, § 2.

> litigate these claims gives support to the argument that the subject matter is committed to the surveillance of Congress, and ultimately to the political process. Any other conclusion would mean that the Founding Fathers intended to set up something in the nature of an Athenian democracy or a New England town meeting to oversee the conduct of the National Government by means of lawsuits in federal courts.
>
> The Constitution created a representative Government with the representatives directly responsible to their constituents at stated periods of two, four, and six years; that the Constitution does not afford a judicial remedy does not, of course, completely disable the citizen who is not satisfied with the 'ground rules' established by the Congress for reporting expenditures of the Executive Branch. Lack of standing within the narrow confines of Art. III jurisdiction does not impair the right to assert his views in the political forum or at the polls. Slow, cumbersome, and unresponsive though the traditional electoral process may be thought at times, our system provides for changing members of the political branches when dissatisfied citizens convince a sufficient number of their fellow electors that elected representatives are delinquent in performing duties committed to them.

*Id*. at 179. While plaintiff's frustration is with the California legislative process and the size of the Assembly districts, the same principles pertain.

Plaintiff's claims must be dismissed as plaintiff has failed to meet the first and third standing requirements. Plaintiff has not asserted a sufficient particularized injury in fact nor can the court redress plaintiff's alleged injuries. In addition, the court is unable to redress plaintiff's grievance as it involves a political question and would require the court to improperly encroach on the legislative branch.

B. <u>Failure to State a Claim</u>

Because the complaint fails to invoke the court's subject matter jurisdiction, the court does not address the other grounds raised in the motions.

III. <u>CONCLUSION</u>

The motions to dismiss for lack of subject matter jurisdiction must be granted. Moreover, the very essence of plaintiff's claims present a non-justiciable controversy and because this court cannot discern any manner by which plaintiff could cure by amendment the defects discussed above, the complaint should be dismissed without leave to amend.

////

Accordingly, IT IS HEREBY RECOMMENDED that the motions to dismiss, Dckt. Nos. 16 and 18, be granted and this case be dismissed without leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 7, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE